IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                                    No. 4:18-cv-386-DPM

PAUL FOWLER                                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

Was Paul Fowler, Inc., merely Paul Fowler's alter ego?  That's the issue presented by the parties' cross motions for summary judgment. Fowler lays tile for a living.  As he put it, "I'm a guy that just works on my knees." *Doc. 14-12 at 9.*  He did business through PFI between 2002 and roughly 2011.   PFI owes approximately $77,000 for unpaid corporate income taxes for 2009 and 2010.   Fowler dissolved this corporation in 2013, and now lays tile for MSK Enterprises, Inc., a corporation wholly owned by his wife and named after their children's initials.  The United States has sued Fowler, seeking to collect the back corporate taxes on three theories:  veil piercing based on an alter ego analysis;  fraudulent transfer under ARK. CODE ANN. §§ 4-59-204 & 205; or Arkansas's trust-fund doctrine.  The second two theories depend on how assets were handled in winding up PFI.  They're hanging fire for trial pending a ruling on the cross motions for judgment about PFI supposedly being Fowler's second self.

Fowler is correct on an important background point—Arkansas law controls whether PFI's corporate veil should be pierced. *United States v. Scherping*, 187 F.3d 796, 802 (8th Cir. 1999). He is mistaken, though, about the applicable statute of limitations. Fowler probably adequately pleaded this defense, albeit not explicitly, by asserting generally all affirmative defenses listed in Federal Rule of Civil Procedure 8(c). *Doc. 3 at 3.* He is mistaken on the merits of limitations because federal law, not Arkansas law, controls that issue. *United States v. Wurdemann*, 663 F.2d 50, 51 (8th Cir. 1981) (*per curiam*). And the United States sued him in 2018, within the ten years of its 2009 and 2010 assessments of these unpaid taxes. 26 U.S.C. § 6502.

The corporate veil is thick. As Fowler emphasizes, precedent admonishes that it should be pierced only with "great caution." *Banks v. Jones*, 239 Ark. 396, 399, 390 S.W.2d 108, 110 (1965). The Arkansas Supreme Court gathered and categorized many of the applicable cases in *Anderson v. Stewart*, 366 Ark. 203, 206–09, 234 S.W.3d 295, 298–99 (2006). Professor Goforth has helpfully discussed this law, too. Carol R. Goforth, *A Review of Piercing the Veil Cases in Arkansas*, 2011 Ark. L. Notes 17. The canonical statement of the rule is, as a matter of equity, a court should pierce the veil "when the corporate form has been illegally abused to the injury of a third party." *Anderson*, 366 Ark. at 206, 234 S.W.3d at 298. The United States contends that Fowler illegally abused PFI because the corporation didn't pay its

-2-

income taxes, which injured the Treasury.   As commentators have noted, the illegality criterion waxes and wanes in the precedent, depending upon the whole of the circumstances.  The Court agrees with Professor Goforth's conclusion that the Arkansas cases that allow piercing are in three main camps—significant failure to observe formalities, substantial undercapitalization, and evasion of legal obligations—and often some combination of these circumstances. Goforth, 2011 Ark. L. Notes at 23.

Whether to pierce is a question of fact in Arkansas.  *Anderson*, 366 Ark. at 207, 234 S.W.3d at 298.  Most of the appellate cases are thus post-trial.  The precedent's posture gives this Court pause.  But, the United States and Fowler have each asked for judgment as a matter of law on whether PFI was merely his alter ego.  Fowler does not dispute any material fact asserted by the United States.  While the United States hedges on some of the material facts asserted by Fowler, almost all of these points are in the nature of marginal clarifications.  The Court will therefore try to answer the alter ego question on the current record, which includes tax returns, corporate records, bank statements, and the depositions of Mr. and Mrs. Fowler.

Here are the material facts, stated most favorably to the non-moving party where some material dispute exists.  *Smith-Bunge v. Wisconsin Central, Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019).  The Fowlers ran a "real simple business" where Mr. Fowler laid tile and Mrs. Fowler

-3-

handled the records. *Doc. 14-13 at 8.* Jim Morris was Paul Fowler's tax preparer from 1996 till 2008. He advised Mr. Fowler to incorporate his tile business for tax purposes. Neither Morris nor anyone else told the Fowlers to "separate Paul Fowler, Inc. from Paul Fowler." *Doc. 14-12 at 13.* Paul Fowler continued to run his business out of his home and use his personal trucks and tools for PFI. This was done without any type of rental agreement between himself and the corporation. He was PFI's lone shareholder. The corporation paid its state franchise taxes. But PFI never held a board meeting or shareholder's meeting. And the Fowlers mixed business and personal expenses:  they paid their mortgage, cellphone, life insurance, groceries, and some fast-food costs out of PFI bank accounts. All receipts went into the proverbial shoebox. At the end of every year, Mrs. Fowler would go "line by line" over the bank statements, and go through all the receipts in the shoebox, separating what was what, and then giving all the information to Morris to figure out the taxes. *Doc. 14-13 at 7 & 11.* The PFI money that paid personal expenses was classified as a draw on the corporation.

Between 2002 and 2008, Morris lied to the Fowlers about what PFI owed in taxes. (Morris was convicted by a jury in 2011 for many crimes, including causing others to file false tax returns. *United States v. Morris,* No. 4:10-cr-90-SWW-1, *Doc. 91* (E.D.Ark. 29 February 2012).). PFI, it turned out, was badly delinquent in its taxes. With the help of counsel, and a new tax preparer, the Fowlers started addressing the situation in

2009. After sorting things with the United States, the Fowlers "got rid of everything" to pay more than $75,000 in back taxes, penalties, and fees. *Doc. 17 at 4; Doc. 14-13 at 20.* The Fowlers stopped using PFI for their tile business sometime in 2011 and formally dissolved the corporation in 2013. They thought they were out of the woods, but the United States says that PFI still owes roughly $77,000 in taxes for the 2009 and 2010 tax years.

The United States contends that, as a matter of law, the Fowlers' loose business practices add up to abuse of the corporate form to avoid their tax obligations. The Court disagrees. When a corporation tries to evade taxes, or not comply with its federal or state obligations, the veil can be pierced. *Anderson,* 366 Ark. at 207, 234 S.W.3d at 298. The United States qualifies as an injured third party. But fraud or deception is also "generally involved" in the Arkansas cases that approve piercing. *Ibid.* This record doesn't demonstrate fraud or deception. It demonstrates very loose business practices. Mr. and Mrs. Fowler testified at length about how they took Morris at his word. He never advised them to keep things separate, have agreements between Paul Fowler and PFI, hold corporate meetings, elect officers, and prepare minutes. And when the truth came out about Morris and the taxes, the Fowlers got counsel and a new tax advisor, paying what they believed was owed. The record made so far contains no conclusive evidence that the Fowlers set up PFI, or operated it, simply as a sham to deprive the

-5-

government of revenue unjustly.  The equity, for example, pulled the other way in *Humphries v. Bray*, 271 Ark. 962, 966–67, 611 S.W.2d 791, 793 (1981), where three intertwined businesses were held to be one for workers' compensation coverage purposes.

The deep issue, as the Court sees it, is PFI's last years—how the winding up was done.  This is one of those cases that turns on a combination of all the circumstances—looseness in formalities plus possible evasion of legal obligations, through some fraud, deception, or illegality.  The many shortcomings in the formalities here are not enough alone to support a judgment.  Whether the United States can prevail on the alter ego theory depends instead on the Fowlers' purposes and actions in the wind-up, just as do the United States' fraudulent-transfer and trust-fund-doctrine theories.  To decide where the equity is, the Court must discern the Fowlers' intentions.  And that is best done after a trial, as illustrated by the precedent.  *E.g., Anderson*, 366 Ark. at 205, 234 S.W.3d at 297.

\* \* \*

The parties' motions for summary judgment, *Doc. 12 & 16*, are denied without prejudice.  The case will proceed to a bench trial on all three counts.  An Amend Final Scheduling Order will issue.

So Ordered.

_D.P. Marshall Jr._
D.P. Marshall Jr.
United States District Judge

_13 August 2020_